RECORD NOS. 17-4102(L), 17-4186, 17-4191, 17-4207

In The

# United States Court of Appeals

For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## VICTOR OYEWUMI OLOYEDE, BABATUNDE EMMANUEL POPOOLA, a/k/a Emmanuel Popoola, a/k/a Tunde Popoola, MOJISOLA TINUOLA POPOOLA, a/k/a Mojisola Oluwakemi Tin Popoola, a/k/a Moji T. Popoola, GBENGA BENSON OGUNDELE, a/k/a Benson Ogundele,

*Defendants – Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT

_____

### REPLY BRIEF OF APPELLANTS

_____

| | | |
|---|---|---|
| **Justin Eisele** | **John O. Iweanoge, II** | **Richard A. Seligman** |
| **SEDDIQ LAW FIRM.** | **THE IWEANOGES' FIRM, PC** | **LAW OFFICE OF RICHARD SELIGMAN** |
| **14452 Old Mill Road, Suite 201** | **Iweanoge Law Center** | **1350 Connecticut Avenue,** |
| **Upper Marlboro, Maryland 20772** | **1026 Monroe Street, NE** | **  NW, Suite 202** |
| **(301) 513-7832** | **Washington, DC 20017** | **Washington, DC 20036** |
| | **(202) 347-7026** | **(202) 745-7800** |
| | | |
| *Counsel for Appellant* | *Counsel for Appellant* | *Counsel for Appellant* |

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

ERROR IN APPELLEE'S STATEMENT OF FACTS ............................................1

ARGUMENT - BABATUNDE EMMANUEL POPOOLA ...................................1

    I.    THE EVIDENCE WAS INSUFFICIENT TO CONVICT ON CONSPIRACY TO COMMIT WIRE FRAUD ...................................1

    II.   THE EVIDENCE WAS INSUFFICIENT TO CONVICT ON CONSPIRACY TO COMMIT MONEY LAUNDERING ..................3

    III.  INDIVIDUAL Z's CONSENT TO POPOOLA PROVIDED HIM WITH LAWFUL AUTHORITY TO USE THE BANK ACCOUNT ........................................................................3

    IV.  EVEN IF THE ENHANCEMENT AS TO SOPHISTICATED MEANS RELIED UPON SECTION 2S1.1(b), IT WAS ERROR FOR THE COURT TO ENHANCE MR. POPOOLA'S SENTENCE ON THE BASIS THAT HE ENGAGED IN SOPHISTICATED MONEY LAUNDERING ..........4

ARGUMENT - GBENGA BENSON OGUNDELE ...............................................5

    I.    THE GOVERNMENT INCORRECTLY STATES THE STANDARD OF REVIEW AS ADMISSION OF THE 1006 CHARTS VIOLATED THE DEFENDANTS' RIGHT TO A FAIR TRIAL ........................................................................5

    II.   THE TRIAL COURT ERRONEOUSLY INSTRUCTED THE JURY WITH REGARD TO AGGRAVATED IDENTITY THEFT ...........................................................................8

    III.  THE COMMON LAW RULE OF COMPLETENESS REQUIRED THE ENTIRE STATEMENT TO BE ADMITTED INTO EVIDENCE ......................................10

i

ARGUMENT – MOJISOLA TINUOLA POPOOLA ............................................12

    I.    CONTRARY TO THE GOVERNMENT'S ASSERTIONS
        THERE IS LONG ESTABLISHED PRECEDENT THAT
        ENTERING THE COMBINATION TO A SAFE IS
        TESTIMONIAL CONDUCT WHICH WHICH IS SIMILAR
        TO THE ACT OF ENTERING A PASSCODE INTO AN
        IPHONE AND THE GOVERNMENT DID NOT MEET IS
        BURDEN TO SUPPORT ITS ASSERTION THAT THE
        INEVITABLE DISCOVERY DOCTRINE WOULD APPLY
        TO THE CONTENTS OF THE IPHONE ..........................................13

    II.    THE WILLFUL BLINDNESS JURY INSTRUCTION WAS
        GIVEN IN ERROR WITH RESPECT TO MOJISOLA
        POPOOLA BECAUSE THE GOVERNMENT FAILED TO
        PROVE SPECIFIC ACTS OF DELIBERATE IGNORANCE
        AS A PREDICATE TO THE INSTRUCTION ..................................20

CONCLUSION ....................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Curcio v United States*,
354 U.S. 118 (1957)................................................................13, 15

*Doe v United States*, ("Doe II"),
487 U.S. 201 (1988)................................................................13, 14

*In Re Order Requiring Apple, Inc. to Assist in the Execution of a*
*Search Warrant Issued by This Court*,
15 MC 1902 (E.D.N.Y. Oct. 28, 2015) .......................................19

*Miranda v. Arizona*,
384 U.S. 436 (1966)................................................................15, 16

*Nix v. Williams*,
467 US 431 (1984)........................................................................18

*Riley v. California*,
134 S. Ct 2473, 189 L. Ed. 2d 430 (2014)..................................17

*United States v. Bailey*,
No. PWG-16-0246,
2017 U.S. Dist. LEXIS 80093 (D. Md. May 24, 2017) ...............10

*United States v. Blatney*,
No. MC 2016-16,
2017 WL 2422807 (A.F. Ct. Crim. App. May 22, 2017)............15

*United States v. Bullette*,
854 F.3d 261 (4th Cir. 2017) .......................................................19

*United States v. Carbins*,
882 F.3d 557 (5th Cir. 2018) .....................................................8, 9

*United States v. Djibo,*
   151 F. Supp. 3d 297 (E.D.N.Y. 2015) ....................................................17, 19

*United States v. Ebert,*
   178 F.3d 1287 (4th Cir.), *opinion amended on denial of reh'g,*
   188 F.3d 504 (4th Cir. 1999) ......................................................................22

*United States v. Faulkenberry,*
   614 F.3d 573 (6th Cir. 2010) .......................................................................1

*United States v. Green,*
   272 F.3d 748 (5th Cir. 2001) ................................................................14, 15

*United States v. Hassan,*
   742 F.3d 104 (4th Cir. 2014) ......................................................................10

*United States v. Hilton,*
   625 F. App'x 754 (6th Cir. 2015)...........................................................15, 17

*United States v. Hubbell,*
   530 U.S. 27 (2000)................................................................................13, 14

*United States v. Janati,*
   374 F.3d 263 (2004) ...................................................................................8

*United States v. Jinwright,*
   683 F.3d 471 (4th Cir. 2012) ......................................................................20

*United States v. Kirschner,*
   823 F. Supp. 665 (E.D. Mich. 2010) ..........................................................14

*United States v. Nicholson,*
   176 App'x 386 (4th Cir. 2006) ...................................................................22

*United States v. Otuya,*
   720 F.3d 183 (4th Cir. 2013).....................................................................3, 4

*United States v. Patane,*
   542 U.S. 630 (2004)...............................................................................15, 16

iv

*United States v. Rosemond*,
  134 S. Ct. 1240 (2014)................................................................8

*United States v. Schnabel*,
  939 F.2d 197 (4th Cir. 1991) ....................................................21

*United States v. Spears*,
  729 F.3d 753 (7th Cir. 2013) ......................................................4

*United States v. Stevens,*
  487 F.3d 232 (5th Cir. 2007) ....................................................14

*United States v. Whittington*,
  26 F.3d 456 (4th Cir. 1994) ..................................................21-22

## CONSTITUTIONAL PROVISION

U.S. Const. amend. V ................................................11 13, 14, 17

## STATUTES

18 U.S.C. § 924(c) .......................................................................8

18 U.S.C. § 1028A .......................................................................4

18 U.S.C. § 1343 .........................................................................1

18 U.S.C. § 1349 .........................................................................1

18 U.S.C. § 1956 .........................................................................4

## RULES

Fed R. Evid. 106 ...................................................................10, 11

Fed R. Evid. 701 .........................................................................7

**GUIDELINES**

U.S.S.G. § 2S1.1 ................................................................4

U.S.S.G. § 2S1.1, cmt. n.5(A)..........................................4

U.S.S.G. § 2S1.1(b).........................................................4

U.S.S.G. § 2S1.1(b)(3).....................................................4

**OTHER AUTHORITIES**

31 Charles Alan Wright & Victor James Gold,
*Federal Practice and Procedure* § 8043 (1st ed. 2000) ..........................7

Samuel Gibbs, *San Bernadino iPhone hack won't work on new models, says
the FBI,* THE GUARDIAN, April 7, 2016, https://www.theguardian.com/
technology/2016/apr/07/san-bernadino-iphone-hack-work-newer-models-
fbi-james-comey (last visited May 4, 2018) ..........................18

## ERROR IN APPELLEE'S STATEMENT OF FACTS

The Government incorrectly stated on page 42 of its brief that Babatunde Popoola was sentenced to an aggregate term of incarceration of 120 months, comprised of 96 months for the two conspiracies and 24 months for aggravated identity theft count citing to JA 4737-4742. However, MR. Popoola was sentenced to a total term of 144 months consisting of 120 months on counts 1 & 2 to run concurrently and 24 months on the aggravated identity theft count consecutive to Counts 1 & 2 for a total of 144 months. JA 4738.

## ARGUMENT – BABATUNDE EMMANUEL POPOOLA

### I.     THE EVIDENCE WAS INSUFFICIENT TO CONVICT ON CONSPIRACY TO COMMIT WIRE FRAUD

The Government charged Popoola with violation of 18 U.S.C. § 1349 under Count 1 alleging conspiracy to commit wire fraud. Wire fraud, as criminalized by the provisions of 18 U.S.C. § 1343, consists of three elements. The prosecution must establish "that the defendant devised or willfully participated in a scheme to defraud, that he used or caused to be used an interstate wire communication in furtherance of the scheme, and that he intended to deprive a victim of money or property." *See United States v. Faulkenberry,* 614 F.3d 573, 581 (6th Cir. 2010). Because Mr. Popoola was charged with *conspiracy* to commit wire fraud, 18 U.S.C. § 1349, the Government also was required to establish beyond a

reasonable doubt that "two or more persons conspired, or agreed, to commit the crime of wire fraud" and "that the defendant knowingly and voluntarily joined the conspiracy."

Mr. Popoola's argument in his opening brief as to insufficiency of the evidence as to the conspiracy to commit wire fraud is based on the absence of evidence to support the first and second elements of conspiracy that Mr. Popoola conspired to commit wire fraud and did not knowingly and voluntarily join the conspiracy. For Mr. Popoola to conspire to commit wire fraud, there should be evidence of scheme to defraud in which Mr. Popoola conspired to be part of and knowingly and voluntarily joined. Mr. Popoola in his opening brief argued and showed that there was no underlying scheme to deprive a victim of money in which he could be linked or that he voluntarily and knowingly joined. In the absence of an underlying scheme to defraud in which Mr. Popoola knowingly and voluntarily joined, there would be no conspiracy. Mr. Popoola in the opening brief discussed in detail the weakness of the factual foundation for the underlying scheme as well as the absence of evidence that he knowingly and voluntarily joined in the conspiracy to commit wire fraud.

Therefore, the evidence was insufficient to establish the two elements of conspiracy to commit wire fraud.

## II.    THE EVIDENCE WAS INSUFFICIENT TO CONVICT ON CONSPIRACY TO COMMIT MONEY LAUNDERING

Similarly, there was insufficient evidence of conspiracy to commit money laundering. As argued in the opening brief, the evidence presented by the government does not support a money laundering scheme involving Mr. Popoola, as a result Mr. Popoola could not have conspired with another to commit money laundering where no money laundering has been sufficiently alleged as to Mr. Popoola. Mr. Popoola could not have knowingly conspired to commit money laundering when the facts relied upon does not amount to money laundering. If the activities alleged in the indictment and proved at trial does not amount to money laundering, it becomes factually impossible for Mr. Popoola to conspire as well as to voluntarily and knowingly join a money laundering scheme.

## III.    INDIVIDUAL Z's CONSENT TO POPOOLA PROVIDED HIM WITH LAWFUL AUTHORITY TO USE THE BANK ACCOUNT

The Government in its brief argues that *United States v. Otuya*, 720 F.3d 183, 189 (4th Cir. 2013) has held that no amount of consent from a coconspirator can constitute "lawful authority" to engage in the kind of deplorable conduct Otuya was accused. Brief at 89. However, in this case Ms. Individual Z was not a coconspirator but her sister that consented to the singular use of her account to make a deposit by whom he provided the account number. The issue in this case is not about lawful authority because Individual Z consented to the use of her account

3

to make a deposit. This case is synonymous with *United States v. Spears*, 729 F.3d 753 (7th Cir. 2013) and the Court should reverse its holding in *Otuya* to the extent it unreasonably extends the scope and meaning of identity theft under Section 1028A.

**IV.    EVEN IF THE ENHANCEMENT AS TO SOPHISTICATED MEANS RELIED UPON SECTION 2S1.1(b), IT WAS ERROR FOR THE COURT TO ENHANCE MR. POPOOLA'S SENTENCE ON THE BASIS THAT HE ENGAGED IN SOPHISTICATED MONEY LAUNDERING**

The District Court erred in its imposition of a two-level increase in his offense level under *U.S. Sentencing Guidelines Manual* ("U.S.S.G.") § 2S1.1(b)(3) (2010), based on its finding that he was engaged in sophisticated money laundering. Under U.S.S.G. § 2S1.1(b)(3), a two-level enhancement in the defendant's offense level is warranted if the defendant is convicted of violating 18 U.S.C. § 1956 and the offense involved sophisticated money laundering. The commentary to U.S.S.G. § 2S1.1 defines sophisticated laundering as "complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense," that "typically involves the use of" fictitious entities, shell corporations, or layering of transactions. U.S.S.G. § 2S1.1, cmt. n.5(A).

A review of the record and evidence in this case shows that the District Court erred in finding that Popoola was engaged in sophisticated money laundering, warranting the two-level increase. There was no evidence of use of fictitious entities, shell corporations, or layering of transactions. Clearly the garden variety money laundering does not attract a two-level enhancement except if the money laundering activity was complex and or intricate. There is nothing in the alleged conduct or evidence presented at trial that demonstrates that the alleged money laundering other than withdrawals from the bank accounts were complex and intricate.

The Court should hold that the Court erred in enhancing Appellant's sentence by two levels based on sophisticated means.

## ARGUMENT - GBENGA BENSON OGUNDELE

## I. THE GOVERNMENT INCORRECTLY STATES THE STANDARD OF REVIEW AS ADMISSION OF THE 1006 CHARTS VIOLATED THE DEFENDANTS' RIGHT TO A FAIR TRIAL

The government frames the admission of 1006 charts in this case as merely an evidentiary issue. This is error. The defendants are guaranteed a fair trial. The admission of these substantive evidence charts, based on improper opinion evidence and faulty methodology, deprived the defendants of that right.

The cash transactions in these charts were never proven to have come from fraud victims. Further, the testifying agent (who did not even create the chart data

set) testified that the cash transactions received not nearly the same scrutiny as transactions tied to checks or wires. JA 2002.

The Government asserts that our "only" complaint is that the chart included some but not all of thPe information in the financial charts. They make a clever point that "of course they did not include all of the information." Gov't Br. at 59. This does not get to the substance of the constitutional violation in any meaningful way.

The evidence was presented through Agent Rutledge. However, she as merely the person with the accounting background. The methodology of what was placed into the charts and what was placed into the charts clearly was at the direction of the prosecuting attorney. They had a theory that these cash transactions were all to do with fraud. However, that was never proven to be the case a trial. In fact, there were defense witnesses that proved that some of the cash transactions were legitimate.

Contrary to the Government's assertion in their brief, Defendants were not concerned that additional underlying bank records were not introduced at trial. The defense claim is that the charts were not summaries. The charts were created based on the opinion of the case agent and prosecutors as to what amounts were and were not fraudulent. This is not a summary of totals. The underlying data in the chart must not only be admissible otherwise, but also an accurate compilation.

31 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 8043, at 525 (1st ed. 2000). Without a consistent methodology in gathering the information to put into the chart, it necessarily cannot be accurate and therefore is inadmissible. Not only did the court abuse its discretion, the admission of the evidence as substantive evidence deprived the defendants of a fair trial.

The Government argues that Agent Custer testified numerous times and that he could have been cross-examined on the methodology of the chart. This argument is without merit. First, the methodology of the chart came out through Agent Rutledge. Rutledge's testimony sufficiency proved that the manner in which the chart data was gathered and placed into the chart was inconsistent and unreliable. Custer was not necessary to add to this point. Second, it is not the job of the defense attorney to rehabilitate the Government's erroneous choice in who the appropriate witness is to introduce particular evidence. The charts were inappropriate opinion evidence because they were not "rationally based on the witness's perception." Fed R. Evid. 701. The Government erred in using Rutledge to introduce the charts and the trial court erred in overruling defense arguments.

The prosecutors in this case tactically decided which transactions to include in their charts under the guise of saving the court time. At no point during the pretrial conferences did the trial court pressure the Government on their timeline of

7

introducing evidence. This is starkly in contrast to the trial court in *Janati* who pressured the Government to try their complex case in only three days. *Id.* at 266. The Government tried this case over a period of a month.

These charts were used to unfairly influence the jury. There was no rush.

## II. THE TRIAL COURT ERRONEOUSLY INSTRUCTED THE JURY WITH REGARD TO AGGRAVATED IDENTITY THEFT

Caselaw cited by the government supports the argument that an "advance knowledge" requirement should be applied in both § 924(c) cases and aggravated identity theft case. *See United States v. Carbins*, 882 F.3d 557, 565-66 (5th Cir. 2018). As stated in the opening brief, and described in *Carbins*, the United States Supreme Court has held that a § 924(c) charge requires advanced knowledge. *United States v. Rosemond*, 134 S. Ct. 1240 (2014). Current defendants argued at trial that this same line of logic, due to the similarity in statutory construction, should applied to aggravated identity cases.

The Fifth Circuit entertained the "advance knowledge" argument in *Carbins*. The Court did not argue that "advance knowledge" is not required. In fact, the Court applied a "advance knowledge" standard. However, in the end, the Court found that advance knowledge could have been reasonably inferred from the facts at hand. The Fifth Circuit adopted the "advance knowledge" requirement in that aggravated identity theft case.

The facts of that case differ from the facts presented at this trial. In *Carbins*, there was evidence that the defendant knew the bank drops were IRS deposits. *Id.* at 19. The Court opined that it is reasonable to infer that tax refunds come from a real person who did not consent to their refunds being given to defendant. *Id.*

At this trial, the defendants all claimed that they were duped by the lead defendant who did not go to trial, Mukhtar. Ogundele argued that regarding his aggravated identity theft that Muhktar tried to assure him that the transaction was legitimate and that Mr. Feely agreed to the transaction. In fact, one of the exhibits Mr. Ogundele writes an email back to Mukhtar "this looks like scam." The jury may have chosen to believe or not believe that Mr. Ogundele legitimately believed he was concerned about Mukhtar scamming people. This contrasts with the *Carbins* case were the defendant had actual IRS tax returns with no paperwork supporting his claim to the money or transaction.

Because the jury instruction was deficient on instructing the jury as to "advance knowledge" the jury could have found Ogundele, along with other co-defendants charged with Aggravated Identity Theft, guilty without having held the government to the appropriate standard of proof.

## III.  THE COMMON LAW RULE OF COMPLETENESS REQUIRED THE ENTIRE STATEMENT TO BE ADMITTED INTO EVIDENCE

Contrary to the assertion of the Government, the common law rule of completeness is not settled through *Hassan*. *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014). *Hassan* does not address arguments made by the defense nor does it address the trial court's pivoted opinion in *Bailey*. *United States v. Bailey*, No. PWG-16-0246, 2017 U.S. Dist. LEXIS 80093, 4 (D. Md. May 24, 2017).

In *Hassan*, the trial court nor the appellate court were asked to address the issue of the still-alive common law aspect of the rule of completeness. In *Hassan*, defense counsel argued that it was unfair for the trial court not to allow him to admit his own related postings on social media. *Hassan* at 134. He had made internet postings related to his faith. Persons committed on his posts fearing that his comments were radical in nature. *Hassan,* in response to other comments, wrote that he did not support terrorism. *Id.* He wanted to introduce these exculpatory posts. These posts were "written" statements clearly covered by the promulgated rules. Fed R. Evid. 106. Ogundele and the other codefendant statements here were oral.

A full panel is not required for the Fourth Circuit to reverse itself because this Court has yet to address the issue with respect to the common law. Oral statements, as was the case here, were covered by the common law rule of

10

completeness and Rule 106 does not address or override the common law in this respect.

The government strategically slices statements of a defendant so that the defendant is placed in an untenable position. First, the defendant can choose to testify to clarify the distorted and inaccurate portrayal of his own statement. By doing this, he is forced to give up his 5th Amendment rights. His second option is to maintain his Fifth Amendment rights and allow the government to manipulate the truth of what happened in the interview under the guise of protecting the integrity of evidence before the jury.

The common law rule of completeness was fundamentally crucial to a fair trial. If you do not tell the entire story, it is misleading. Prosecutors want to control the narrative of a trial and they make tactical decisions to that end. To characterize their decision-making in this process as altruistic is insulting to trial and appellate courts in this Circuit. Failing to admit the entire statement was unfair as it misrepresented the statements as a whole. Mr. Ogundele admitted to certain behaviors that implicated him, but he also attempted to explain the context of his behavior and his trust in his brother in law.

The statement of Ogundele or the other co-defendants should have been admitted in their complete format. Failure to do so misled the jury and was in violation of the common law and defendants' right to a fair trial.

## ARGUMENT – MOJISOLA TINUOLA POPOOLA

The Government in their brief argued that Ms. Popoola's act of entering her passcode into her iPhone was not testimonial conduct, and even if it were, that the contents of her iPhone would still come in as physical fruits of an unwarned statement or under the theory of inevitable discovery. Their argument fails because the act of entering her passcode was in fact testimonial conduct pursuant to established Supreme Court precedent, the contents of her phone are not physical in nature and the government did not meet their burden of proof under the theory of inevitable discovery of the contents of the iPhone.

The Government argued that the willful blindness jury instruction was not given in error because Bank of America shut down one of Ms. Popoola's bank accounts and that placed her on notice of alleged fraud and she turned a blind eye to that fraudulent conduct. However, the fraudulent conduct alleged at trial was prior to the closing of her bank account so the bank's closing did not alert her to fraud. Moreover, they do not allege, as required for the instruction to be appropriate, any specific action(s) taken by Ms. Popoola to intentionally close her eyes to illegal acts.

12

I.    **CONTRARY TO THE GOVERNMENT'S ASSERTIONS THERE IS LONG ESTABLISHED PRECEDENT THAT ENTERING THE COMBINATION TO A SAFE IS TESTIMONIAL CONDUCT WHICH WHICH IS SIMILAR TO THE ACT OF ENTERING A PASSCODE INTO AN IPHONE AND THE GOVERNMENT DID NOT MEET IS BURDEN TO SUPPORT ITS ASSERTION THAT THE INEVITABLE DISCOVERY DOCTRINE WOULD APPLY TO THE CONTENTS OF THE IPHONE**

The Government in their brief argued that Ms. Popoola's act of entering her passcode into her iPhone was not testimonial conduct, and even if it were, that the contents of her iPhone would still come in as physical fruits of an unwarned statement or under the doctrine of inevitable discovery.

As Ms. Popoola argued in her opening brief, the act of entering her passcode into her iPhone was testimonial conduct subject to Fifth Amendment protections. The Fifth Amendment privilege against self-incrimination protects against compelled "testimonial" communications that require a person to use "the contents of his own mind" to communicate some fact. *Curcio v United States*, 354 U.S. 118, 128 (1957). It is well-established that a communication need not be verbal to be testimonial. *Doe v United States*, ("Doe II"), 487 U.S. 201, 210 n.9 (1988) (noting agreement on this point with Justice Stevens' dissent, id. at 219). Accordingly, the focus is not on whether the communication is "spoken" but whether it involves, by word or by deed an "expression of an individual's mind". (Stevens J. dissenting) As the Supreme Court noted in *Hubbell*, while it is well established that "mere physical acts" that do not express the contents of one's mind are not testimonial,

13

compelled entry of the combination of a safe is testimonial because it requires the

compelled use of the "contents of [ an individual's] own mind" and is within the

Fifth Amendment privilege. *United States v. Hubbell*, 530 U.S. 27, 43 (2000); see

also *United States v Kirschner*, 823 F. Supp. 665, 669 (E.D. Mich. 2010) (quashing

a subpoena for computer passwords, reasoning that, under *Hubbell* and *Doe*, the

subpoena would have required the suspect "to divulge through his mental process

his password").

    The government in their brief stated that entering a combination into a safe

is *not* testimonial conduct, without verbally giving the combination to law

enforcement.  The government does not delve any further into this argument

besides to note it in passing. Gov't Br. at 46.  The government equates entering her

iPhone passcode to unlocking a house door to argue that it is not testimonial

conduct.  *Id.* (citing to *United States v. Stevens,* 487 F.3d 232, 243 (5th Cir. 2007).

However, the 5th Circuit in *Stevens* distinguished the facts of *Stevens* from it's

precedent in *United States v. Green* stating:

> …..the instant case is unlike *United States v. Green,* 272 F.3d
> 748, 752 (5th Cir. 2001), where we held that asking an arrested
> defendant to disclose the location of firearms and open cases
> containing those firearms after he had been given
> his *Miranda* warnings and had requested counsel was
> "custodial interrogation" resulting in testimonial acts
> inadmissible under the *Miranda* doctrine.

14

Id. at 243. Clearly, the facts of Green are much more comparable to the facts in this case. Whereas using a key to unlock a house in Stevens is starkly different than, asking for the location of evidence as in *Green* or asking for the location of evidence in an iPhone by requesting the defendant to enter a passcode. Using a key to enter a house is also unlike entering a combination. into a safe or a passcode into an iPhone. The later requires a person to demonstrate the contents of their own mind to communicate some fact. *See Curcio, Supra.* The former does not. Though the 4th Circuit has yet to rule specifically on the issue of whether entering a passcode into an iPhone is testimonial conduct, others, as argued in Ms. Popoola's opening brief, have found in the affirmative and can offer guidance. *See United States v. Blatney,* No. MC 2016-16, 2017 WL 2422807, at 3 (A.F. Ct. Crim. App. May 22, 2017).

The government argues that even if it were testimonial conduct, the cell phone would have come in under the theory of inevitable discovery and that the court below had already made that ruling; or alternatively that it would have come in as tangible evidence derived from voluntary statements obtained in violation of *Miranda*. Gov't Brief at 46-47 (citing to *United States v. Patane*, 542 U.S. 630 (2004) and *United States v. Hilton*, 625 F. App'x 754, 760 (6th Cir. 2015)). However, this argument is misleading because the trial court's ruling on inevitable discovery was focused on the initial location of the physical iPhone itself and not

15

the contents of the iPhone as a fruit of the testimonial statement of the passcode. (JA 294-295).

In *Patane,* police officers attempted to state the warnings required by *Miranda*, but were interrupted by the defendant who stated he knew what his rights were. *Patane*, at 635. The officers then asked defendant if he had a gun and where it was, to which he said yes and told them the location. *Id.* Defendant moved to suppress the gun as fruits of an unwarned statement. *Id.* The Supreme Court ruled that *physical* evidence, but not *testimonial* evidence could come in when an unwarned but voluntary statement led to its discovery. *Id.*, at 634 (emphasis added). In this matter, though, the *physical* phone itself was not entered as evidence during the trial. Instead, the contents of the phone were entered and used to convict Ms. Popoola. The physical phone itself is very different than the phone's contents that were discovered solely through Ms. Popoola's entrance of her passcode.

> ….a cell phone is not just a physical object containing information. It is more personal than a purse or a wallet, and certainly more so than the firearm that was used in evidence against Respondent Patane. It is the combined footprint of what has been occurring socially, economically, personally, psychologically, spiritually and sometimes even sexually, in the owner's life, and it pinpoints the whereabouts of the owner over time with greater precision than any tool heretofore used by law enforcement without aid of a warrant. In today's modern world, a cell phone passcode is the proverbial "key to a man's kingdom."

16

*United States v. Djibo*, 151 F. Supp. 3d 297, 310 (E.D.N.Y. 2015) (citing to *Riley v. California,* 134 S. Ct 2473, 189 L. Ed. 2d 430 (2014)).

It seems that the government recognized this and tried to remedy it through reliance on the 6th circuit *Hilton* case.  In *Hilton*, the defendant was on probation in when his probation officer conducted a search of his residence based on probation violations.  While defendant was in back of the police vehicle, he was subjected to interrogation without being Mirandized, during which he disclosed that he owned a Blackberry, which violated the terms of his probation.   At his revocation hearing, defendant was sentenced for violating his probation.  On the same day, the FBI obtained a search warrant for the contents of the Blackberry.  The execution of the warrant for the contents of the device revealed damaging images, movies and text messages that were used against the defendant.  Defendant moved to suppress the contents of his Blackberry based on the initial warrantless search which led to its discovery.   The court determined that because the officer's search, based on reasonable suspicion, would have inevitably found the Blackberry and also would have allowed him to retrieve and copy all data from the phone, there is no Fifth Amendment violation, and the district court did not err in denying suppression of the contents of the Blackberry.  *Hilton*, *Supra*.

Hilton is distinguishable because in this case, unlike Hilton the issue turns on the testimonial statement that reveals the combination or passcode giving access

17

to the cell phone's contents, not the physical whereabouts of the cell phone.  Ms. Popoola's phone was an iPhone 6 plus operating an iOS 9.0, (Gov't Trial Exhibit, Phone 3(a)) which is protected by a 4 digit pass code.  The contents were unable to be accessed without first entering the passcode.  So, even with a valid warrant for the phone and its contents, the government would not have been able to access the contents due to the secure encryption on the device.  The government does not address how the FBI agent would have gotten around this encryption, noting that when asked, "Agent Winkis denied any knowledge of whether the iPhone 6 s could be opened without the password. JA 259-260 ("I'm not familiar with all the technical nuances of each specific make of phone.")."  Gov't Br. at 47-48, n.9. [1]

This failure to address how they would have legally accessed the contents of the phone without Ms. Popoola entering her password is fatal to their inevitable discovery argument.  The burden was on the prosecution to establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means. *Nix v. Williams*, 467 US 431, 444 (1984);

---

[1] The date of this hearing was September 22, 2016; at that time it was publicly known that the FBI could not hack into locked iPhones.  In March of 2016, six months *after* the search of Ms. Popoola's iPhone 6, former Director of the FBI, James Comey, stated that the hack used to gain entrance to a locked iPhone, was only viable for models iPhone 5c and older.  Samuel Gibbs, *San Bernardino iPhone hack won't work on new models, says the FBI,* THE GUARDIAN, April 7, 2016, https://www.theguardian.com/technology/2016/apr/07/san-bernardino-iphone-hack-work-newer-models-fbi-james-comey (last visited May 4, 2018).

18

*United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (citations omitted)

(The inevitable-discovery doctrine constitutes one such exception and allows the

government to use information obtained from an otherwise unreasonable search if

it can establish by a preponderance of the evidence that law enforcement would

have "ultimately or inevitably" discovered the evidence by "lawful means.").

Without doing so, the illegally obtained evidence must be suppressed

     Other courts have recognized the difficulty in accessing the contents of a

locked iPhone.  *See Djibo*, *Supra* (court ruled that the iPhone's contents were not

subject to inevitable discovery because the government had not proved how they

would have accessed the phone's contents without the defendant's passcode).  The

Court in *Djibo* took judicial notice of *In Re Order Requiring Apple, Inc. to Assist*

*in the Execution of a Search Warrant Issued by This Court*, 15 MC 1902 (E.D.N.Y.

Oct. 28, 2015) (Dkt. No. 21 at 7-8, where the government needed the Apple

manufacturer to access the contents of a locked, passcode encrypted iPhone

because they did not have a way to access its contents without the passcode.)  The

government in this case would similarly not have been able to access the contents

of Ms. Popoola's iPhone without her passcode.

## II.   THE WILLFUL BLINDNESS JURY INSTRUCTION WAS GIVEN IN ERROR WITH RESPECT TO MOJISOLA POPOOLA BECAUSE THE GOVERNMENT FAILED TO PROVE SPECIFIC ACTS OF DELIBERATE IGNORANCE AS A PREDICATE TO THE INSTRUCTION

In responding to Ms. Popoola's argument that the willful blindness instruction was given in error, the Government fails to address the fact that for the instruction to apply, they needed to be able to demonstrate actions, specific instances of conduct intended to shield her from the requisite knowledge, taken by Ms. Popoola that demonstrate she intentionally closed her eyes to what was happening.  Negligence and hindsight are not enough.  *See Id.* ("Courts often are wary of giving a willful blindness instruction, because of the danger they perceive in it allowing the jury to convict based on an *ex post facto* 'he should have been more careful' theory or to convict on mere negligence ("the defendant should have known his conduct was illegal")). The only action the government cites to was taken by the bank, not by Ms. Popoola.  Gov't Br. at 81.  The government argues that because all of the defendants' bank accounts were closed, they all should have wondered why.  *Id.*  However, the government's brief does not specify when Ms. Popoola's bank account was closed.  As Ms. Popoola argued in her opening brief, this "should have known" standard is specifically what the courts caution against when providing the instruction.  *See United States v Jinwright*, 683 F.3d 471, 480 (4th Cir. 2012) (Court admonished the jury that a willful blindness charge does not

20

authorize them to find that the defendants acted knowingly because they should have known what was occurring, or that in the exercise of hindsight they should have known what was occurring, or because they were negligent in failing to recognize what was occurring.)

Even if alleging action by the bank, not by Ms. Popoola, were sufficient to warrant giving the willful blindness instruction, the closure of Ms. Popoola's account would not have alerted her to the charged criminal acts occurring such that she was deliberately turning a blind eye to them. Ms. Popoola's bank account was closed on or about August 28, 2014. See text message to joint savings partners, not alleged co-conspirators. Government Phone Exhibit 3(e), JA 4227, and Transcript, JA 3494-97. The Government's Exhibits Charts 8 & 9 show the last alleged fraudulent deposit into her bank account was August 5, 2014. See JA 4210 & 4209. Ms. Popoola could not have deliberately closed her eyes to the alleged meaning of the closure of her bank account if it occurred after the completion of the fraudulent deposits charged.

Courts have found actions taken by defendant appropriate for the application of the willful blindness standard to include: presence at a meeting where fraudulent reselling of mortgages discussed (*Schnabel*, 939 F.2d at 204); notarizing documents that had already been signed by a woman the defendant had been charged with conspiring to defraud (*United States v. Whittington*, 26 F.3d 456, 463

21

(4th Cir. 1994)); serving as a witness to the power of attorney, the deed of transfer, and will of the woman defendant had been charged with conspiring to defraud (*Id.*, at 464); signing of papers to purchase a home in her name and claiming the mortgage interest on her taxes by mother charged with laundering drug money for her son (*United States v. Nicholson*, 176 App'x 386, 393-94 (4th Cir. 2006)). While not an exhaustive list, it's demonstrative of the type of actions that constitute deliberate indifference; the type of actions not alleged in this case. Where these types of actions are not alleged, the willful blindness instruction is given in error.

For example, in *United States v. Ebert*, the government alleged that defendants, charged with conspiracy to buy and sell stolen goods, acted with deliberate indifference because the seller of the stolen goods' operation was highly suspicious, warranting a willful blindness instruction.  *United States v. Ebert*, 178 F.3d 1287 (4th Cir.), *opinion amended on denial of reh'g,* 188 F.3d 504 (4th Cir. 1999).  The court determined that the willful blindness instruction was given in error because no evidence was presented that the seller's operation was highly suspicious nor was proof presented that defendants had their suspicions aroused. *Id*.  Similarly, Ms. Popoola had no reason to have her suspicions aroused because her account was closed after the period of the alleged fraudulent deposits .

The government does not point to a single action of deliberate ignorance taken by Ms. Popoola to avoid knowing that the funds in her account were anything other than stemming from her husband's car business. Without facts supporting that there was an action taken, it was in error to provide the willful blindness instruction.

## CONCLUSION

For the forgoing reasons and those submitted in the Appellants Reply brief, this case should be reversed and remanded for a new trial.

Respectfully Submitted,

/s/ Justin Eisele
*Counsel for Appellant*

/s/ John Iweanoge
*Counsel for Appellant*

/s/ Richard Seligman
Counsel for Appellant

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*5,338*] words.

[      ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.      This brief document complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Times New Roman*]; *or*

[      ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated:  May 7, 2018                              /s/ Justin Eisele
                                                            *Counsel for Appellant*


                                                            /s/ John Iweanoge
                                                            *Counsel for Appellant*


                                                            /s/ Richard Seligman
                                                            *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 7th day of May, 2018, I caused this Reply Brief

of Appellants to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

>Jennifer R. Sykes
>Thomas P. Windom
>OFFICE OF THE U.S. ATTORNEY
>6406 Ivy Lane
>Greenbelt, Maryland  20770
>(301) 344-0112
>
>*Counsel for Appellee*

I further certify that on this 7th day of May, 2018, I caused the required copy

of the Reply Brief of Appellants to be hand filed with the Clerk of the Court.

/s/ Justin Eisele
*Counsel for Appellant*

/s/ John Iweanoge
*Counsel for Appellant*

/s/ Richard Seligman
*Counsel for Appellant*